UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEPHEN HALL,

           Plaintiff,

       v.                                   Case No. 25-CV-1674

CAPT. SCARDINO, LT. MISTRETTA,
LT. RABIDEAUX, LT. KURSZEWSKI,
CO BARRY, CO EWER,
CO HURPLE, and DEPUTY LINSCOTT,

           Defendants.

## SCREENING ORDER

Plaintiff Stephen Hall, who is currently serving a state prison sentence at Waupun Correctional Institution and representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the Court on Plaintiff's motion for leave to proceed without prepayment of the filing fee and to screen the complaint.

**MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE**

Plaintiff has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. § 1915(b)(1). Plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. § 1915(a)(2), and has been assessed and paid an initial partial filing fee of $4.62. Plaintiff's motion for leave to proceed without prepayment of the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

According to the complaint, on July 30, 2024, at approximately 6:30 a.m., Plaintiff experienced severe chest pain and called for emergency backup. Compl. ¶ 13, Dkt. No. 1. A backup team, consisting of Lt. Kurszewski, CO Hurple, and CO Ewer, along with two other correctional officers, lined up at Plaintiff's door. *Id.* ¶¶ 14–15. Lt. Kurszewski ordered Plaintiff to stick his hand out of the tray shoot so that he could be handcuffed and seen by the nurse. *Id.* ¶ 16.

Plaintiff explains that he complied with the order and stuck his hand out of the tray shoot. *Id.* ¶ 17. CO Hurple grabbed both of Plaintiff's hands so that they could be cuffed. *Id.* CO Ewer put one cuff on Plaintiff's right hand and tightened to cuff to its maximum tightness. Then, CO Ewer used a "hip-thrust" to slam the handcuff closed even further. *Id.* ¶ 18. Plaintiff screamed in pain and yelled that the cuff was too tight. *Id.* ¶ 19. Lt. Kurszewski ordered the correctional officers to take the handcuff off. The officers removed the handcuff but advised that Plaintiff would not be seen by the nurse unless he was handcuffed. *Id.* ¶ 20. Plaintiff asserted that the officers broke his wrist and claimed that they were denying him medical care. *Id.* Plaintiff's tray shoot was then closed. *Id.* ¶ 21.

On September 25, 2024, Deputy Linscott escorted Plaintiff to Waukesha Memorial Hospital at 9:00 p.m. *Id.* ¶ 22. At the hospital, Plaintiff underwent an x-ray of his right hand. Plaintiff was diagnosed with a broken wrist, and he was given a prescription for Tylenol and ibuprofen and a hard brace. *Id.* ¶ 23. At approximately 10:45 p.m., Plaintiff was cleared and Deputy Linscott transported Plaintiff back to the Waukesha County Jail. *Id.* ¶ 24.

Once Plaintiff arrived at the Waukesha County Jail, CO Ewer and CO Barry booked Plaintiff into the jail. *Id.* ¶ 25. At that time, Plaintiff was handcuffed to a belly chain and shackled at the feet. *Id.* ¶ 26. CO Barry removed Plaintiff's leg restraints, belly chain, and handcuffs. *Id.* Plaintiff was positioned with his hands up against a black mat on the wall, and CO Barry began a pat down search. During the search, CO Barry "bladed" Plaintiff's buttocks. *Id.* ¶ 27. Plaintiff told CO Barry that there was no need to blade Plaintiff's buttocks and that, if he did it again, Plaintiff would file a Prison Rape Elimination Act complaint for sexual harassment against him. *Id.* ¶ 29. CO Barry responded that he was conducting a proper search and bladed Plaintiff's buttocks two more times. Plaintiff alleges that CO Barry's thumb or index finger grazed his anus at least one of those times. *Id.* ¶ 30.

Plaintiff, agitated, turned around and told CO Ewer and CO Barry that he would not be cooperating with any more searches until they got the supervisor or lieutenant. *Id.* ¶ 31. CO Ewer screamed at Plaintiff to turn around. *Id.* ¶ 32. Plaintiff repeated that he wanted to talk to their supervisor or lieutenant. *Id.* ¶ 33. CO Ewer became agitated and reached for Plaintiff's right hand (the hand with the brace on it). Plaintiff took a step back and moved his hand away from CO Ewer. CO Ewer then threw his elbow at Plaintiff's face, which Plaintiff deflected with his left hand. *Id.* ¶ 34. CO Barry grabbed Plaintiff by the neck and put him in a headlock. *Id.* ¶ 35. The headlock cut off Plaintiff's air flow. Plaintiff tried to resist the takedown but hit the ground. *Id.*

CO Ewer began punching Plaintiff almost a dozen times in the lower back near the kidneys and pushed Plaintiff into CO Barry. CO Barry lost his balance and fell into the corner of a wall, all while holding Plaintiff in a headlock. *Id.* ¶ 36. Deputy Linscott ran over and grabbed Plaintiff's left hand. He wrenched Plaintiff's hand backwards and up toward his head and put his knee on Plaintiff's head. *Id.* ¶ 37. Lt. Rabideaux and Lt. Mistretta, as well as several other correctional

4

officers, rushed into the booking area. Lt. Rabideaux held a taser at the back of Plaintiff's head and told him to stop resisting. Plaintiff screamed to get off of his shoulder, and Deputy Linscott loosened the tension but did not let go. *Id.* ¶ 38.

Plaintiff was placed in a restraint chair and wheeled to another cell where he stayed from 11:00 p.m. to 1:00 a.m. Shortly after Plaintiff was placed in the chair, he began screaming and saying he was in pain from the restraint chair being so tight. Lt. Mistretta told him to stop screaming and "that's what you get for resisting." *Id.* ¶ 39. Plaintiff, however, kept screaming and telling guards that he was in excruciating pain. *Id.* ¶ 40. At approximately 12:00 a.m., Plaintiff screamed that he needed to go to the bathroom. He was told to "hold it." *Id.* ¶ 41. At approximately 1:00 a.m., Plaintiff was taken out of the restraint chair and was escorted to his assigned cell. *Id.* ¶ 42. Plaintiff believes that Captain Scardino was the one who decided to keep Plaintiff in the restraint chair. *Id.* ¶ 43.

## ANALYSIS

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). Plaintiff seeks to proceed on the following claims: (1) Lt. Kurszewski, CO Hurple, and CO Ewer were deliberately indifferent to Plaintiff's serious medical needs on July 30, 2024,when they did not allow Plaintiff to be seen by a nurse after breaking his wrist; (2) CO Ewer used excessive force when tightening Plaintiff's handcuffs on July 30, 2024; (3) CO Barry violated Plaintiff's right to be free from sexual harassment when he "bladed" Plaintiff's buttocks during a search on September 25, 2024; (4) CO Barry, CO Ewer, and

5

Deputy Linscott used excessive force on September 25, 2024; and (5) Plaintiff's placement in a restraint chair on September 25, 2024, constituted cruel and unusual punishment. The complaint must be dismissed because Plaintiff improperly brings unrelated claims in a single case.

As instructed by the Seventh Circuit, under the controlling principle of Rule 18(a) of the Federal Rules of Civil Procedure, "[u]nrelated claims against different defendants belong in different suits" so as to prevent prisoners from dodging the fee payment or three strikes provisions in the Prison Litigation Reform Act. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Specifically, Rule 18(a) provides that "[a] party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternate claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Under this rule, "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George*, 507 F.3d at 607.

Moreover, the court in *George* reminded district courts that Rule 20 of the Federal Rules of Civil Procedure applies as much to prisoner cases as it does to any other case. *Id.* Under Rule 20, joinder of multiple defendants into one action is proper only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20.

Although Plaintiff may believe that all of his claims are related, the court concludes that there are no significant questions of law or fact common to his claims or all of the defendants that would satisfy Rule 20. Instead, the claims involve distinct incidents that occurred on different days and involved a different core set of defendants. The purported claims against the defendants do not arise out of the same transaction or occurrence nor do they share common questions of law

or fact. For example, the factual and legal underpinnings of Plaintiff's claim that he was denied medical treatment for his broken wrist on July 30, 2024, will have nothing in common with the factual and legal underpinnings of his claim that his placement in a restraint chair on September 25, 2024, constituted cruel and unusual punishment. Even if some of Plaintiff's claims could be joined under Rule 20, the court concludes that they should be severed under the court's inherent authority. *See UWM Student Association v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) ("[The federal] rules are broad, giving district courts considerable flexibility in managing and structuring civil litigation for fair and efficient resolution of complex disputes."); *see also Dorsey v. Varga*, 55 F.4th 1094, 1103 (7th Cir. 2022) ("A district court may, in its discretion, deny joinder even if the Rule 20(a)(2) requirements are met."). If Plaintiff wants to continue with this action, he must file an amended complaint that contains only related claims.

Moreover, as Plaintiff considers which claims to pursue, he is reminded that § 1983 "creates a cause of action based on personal liability and predicated upon fault; thus liability does not attach unless the individual defendant caused or participated in a constitutional violation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Further, the doctrine of respondeat superior (supervisory liability) does not apply to actions filed under § 1983, nor does § 1983 create collective or vicarious responsibility. *See Pacelli v. deVito*, 972 F.2d 871, 877 (7th Cir. 1992). This means that only the individual(s) who are allegedly responsible for a violation will be liable. A supervisor is not liable for the alleged misconduct of his or her subordinates unless a plaintiff can demonstrate that the supervisor turned a blind eye to the misconduct while it was occurring. *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015). To be clear, a supervisor failing to discipline a subordinate for a completed act is not the same as a supervisor turning a blind eye to an ongoing act.

If Plaintiff wishes to proceed, he must file an amended complaint curing the deficiencies in the original complaint as described herein. An amended complaint must be filed on or before **January 15, 2026**. Should Plaintiff choose to file an amended complaint with only related claims, it will replace the original complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056 (7th Cir. 1998). Plaintiff should prepare his amended complaint like he is telling a story to someone who knows nothing about the facts of his case. In other words, he should explain (1) what happened; (2) who was involved; (3) when it happened; and (4) how he was impacted by what happened. Plaintiff may pursue unrelated claims in different lawsuits, but he is reminded that he must pay the filing fee for every new lawsuit he files. Plaintiff must also use the court's amended complaint form. *See* Civil L.R. 9(b). If he needs additional space, he may add up to *five* pages.

If Plaintiff files an amended complaint, the court will screen it pursuant to 28 U.S.C. § 1915A. If he chooses not to file an amended complaint, the court will dismiss this action based on his failure to diligently prosecute it.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff is directed to file an amended complaint on or before **January 15, 2026**, which contains only related claims in accordance with this order. If he does not file an amended complaint, the court will dismiss this action based on his failure to diligently prosecute it.

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a blank prisoner amended complaint form and a copy of the guide entitled "Answers to Prisoner Litigants' Common Questions" along with this order.

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $345.38 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Plaintiff is transferred to another institution, the transferring institution shall forward a copy of this Order along with Plaintiff's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Plaintiff is located.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Honorable Byron B. Conway
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS.  It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.  In addition, the parties must notify the Clerk of Court of any change of address.  Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Green Bay, Wisconsin on December 15, 2025.

s/ *Byron B. Conway*
BYRON B. CONWAY
United States District Judge